Ray D. Bowen, Counsel for Appellate Law Professionals and Corporations. Allen Wayne Forestry, Counsel for Appellate. Darren Davis. Counsel for the Appellate should come forward. Good morning, Your Honors. This is Ray Bowen, appearing for Appellate Asphalt Professionals, Incorporated. Your Honors, this is, I think, a case of when is enough? Before we do that, can you tell me how much time you want to reserve? My apology. I would like to reserve five minutes, if I could. I'll let you know when five minutes is there. Please proceed. Thank you. Again, my concern is when is enough enough? We have Mr. Davis, who I think is very clear in his statements of financial affairs and his schedules, took liberties with the facts, the truth. He did not disclose the fact that he had participated in a meeting just some nine months before filing, which diluted shares of stock in a company called DNS, 999,000 shares, which had a value of $1 per share, and indicated that he didn't feel he had to disclose it because the effective date of that meeting was actually some 22 months previous. But the state court found, and this is what's complicated this a little bit, is that we've had a significant amount of litigation in the state court. Significant findings, which are binding. Raise your dichotomy, collateral estoppel, issue preclusion. Are they binding? My understanding of California law is that the court always has discretion not to apply preclusion principles if it would be unjust or otherwise inappropriate. Well, Your Honor, except that factual issues, I think, once they're found by the state court, especially in this case where Judge Coffman said, go to the state court, deal with what you can there. We filed a motion for relief from stay. We could have been denied that motion. It was granted. We went to the state court, spent an incredible amount of time there, and then got to the point where the 727 action was tried in Judge Coffman's courtroom and ruled against us. And then we went, we're going back to the state court to deal with the 523 issues, which were categorized as fraud in the state court, fraud and misrepresentation. And, Your Honor, that is still pending. And that's, you know, my opponent would say that's my fault. And it actually isn't. There have been numerous appeals to the state court, Supreme Court, Court of Appeals. We have another appeal that's, we just filed briefs on Monday of this week, my opening brief. So it, I'm sorry. I thought that was a signal to me or something. You can continue on. Or something like that. So the state court, because of the various appeals, has just not gotten to Phase 3. And as we briefed in our documents, Phase 1 was the breach of contract, which we prevailed. Phase 2 was alter ego, which we prevailed. Phase 3 was fraud and misrepresentation, which is still. I'm sorry. No, you go ahead. I was going to say that, you know, the preclusion argument you're making would say that the state court decisions basically preclude relitigation of all the questions under 727 and 523. And my question is, there's mental state issues in both of those claims, intent, knowledge, and such. How did the state court findings that were made to date have preclusive effect as to those specific questions of mental state that are presented under 727 and 523? The actual issues of the mental state, I'll agree with Your Honor, could only be actually adjudicated by the bankruptcy judge. However, the bankruptcy judge did say, we are not going to relitigate those facts. You're not going to go to the state court and get a bite of the apple there and then come back in my courtroom and have a second bite of the apple. Agreed. But for preclusion to apply, it has to have been necessarily decided in the state court. We know that mental state, the requisite mental state, wasn't necessarily decided in the contract claims and the two phases that went below. So why are we even talking issue preclusion and claim? You know, the underlying facts aren't what is a problem for you. You have to prevail. You must be successful on the mental state. Why is issue preclusion, asking Judge Ferris' question a different way, why is issue preclusion something we're even spending time arguing about? Because the state court not only didn't necessarily, if it had purported to decide it, it still wouldn't be preclusive in a contract action because it wasn't necessarily decided. It wasn't a tortious breach case or whatever. Well, Your Honor, the reason that I do believe it is binding is because Judge Coffin made the ruling that it is going to be binding. I'm not going to retry those issues. No, no, no. I'm not saying that. I'm not being clear. I'm not saying that she, to the extent something was necessarily decided in the contract action, that there was a contract and a breach. And to the extent that's relevant to the fraud claim, that would come in and be entitled to preclusive effect on an adjudication of issues. But for you to win, for you to get a reversal, she has to have been wrong on a number of things, one of which is the mental state. And I don't see why issue preclusion is in any way relevant to that determination. Well, I would contend that the alter ego's issues, Your Honors, did actually decide those issues. In order to get to alter ego, there are 17 different factors that have to be decided, many of which do deal with the intent of the individuals. And in this case, they were all decided in our favor. Every single one was decided that Darren Davis knew what he was doing and did it anyway. And if you want to jump to what happened in the bankruptcy court, we can do that because we had Mr. Polz, our expert, the only expert who went over the records and said, based upon his expertise, training, experience, that Darren Davis should have made disclosures at least about the As-Built drawings. He at least had a duty to do that. And our expert said, based upon everything I've seen, Darren Davis knew he was withholding it. There was a letter from Mr. Halland, who was the engineer, to Mr. Davis. And in that letter, he said, you've got a problem with these As-Builts. If you don't get a new survey, it's going to be a problem. It's going to cost you a few thousand dollars, but I'm not taking responsibility for it. I've got to say, I find it unusual to have an expert witness on a question about another person's intent. I mean, unless this person's clairvoyant or something. How do they have expertise in figuring out what's going on in somebody else's head? Well, but, Your Honor, circumstantial evidence is really all we have. No one's going to come into the bankruptcy court and say, I did it. Sure, and I agree with that. But expert testimony on that? The expert was looking at what he saw, and in his opinion, his expert opinion, he said, I don't know how Mr. Davis could not have not intended what he did. He knew about the As-Built. He knew it was not disclosed. And yet he was told, you're responsible for it. You should disclose it. And there's nothing in the record to show that he ever made that disclosure. In fact, Darren Davis said himself, I never disclosed it because I didn't have to. It wasn't on me. And then we have the issue of the licensure. Again, Mr. Davis says, yeah, I knew I needed a license, but I didn't disclose it. And my opponent actually says it was on my client to investigate that, to determine whether or not the general contractor had a license. Well, assuming that you successfully meet the elements of fraud for fraud and the omission, you know, you have to have a duty that, okay, there was a duty to disclose. He didn't disclose. You still have to get to his state of mind, and it has to have been done with fraudulent intent, not negligence, not mistake, fraudulent intent. And the judge didn't find the requisite fraudulent intent. And yet, Your Honor, the grossness of the conduct can certainly get us to fraudulent intent. If we have a street here that's open, and the street was in fact open, we had blinking lights on it, and there was a pit there that cars were going to drive off into because the elevations were not even. And Mr. Davis took the position that's not my problem. Isn't this a clear error standard review on those kinds of points? Because she's making a finding of fact of what was in Mr. Davis' head. Don't you have to overcome the clear error standard review? Well, yes, I do, Your Honor, but I do think that based on the cumulative effect of everything we did in the state court, and I know, you know, there's a question about how much of that carries over to the bankruptcy court, but based upon all of the findings that our expert looked at, that our witnesses testified to, Mr. Davis knew what he was doing. He had done this for years. This was his way of doing business. So let me see if I understand. What you're basically saying is that if you look at these two resolutions, the second resolution is sort of funny given what happened in state court. How could I win on all these issues in state court and then have the trial judge say, well, it's just an innocent problem? But isn't the problem with that it could happen? Two judges look at the same set of facts and at least on this one ultimate issue come to a different conclusion, and that conclusion is inconsistent with what happened in the prior trial. It doesn't make any sense given what happened in the prior trial. But is that reversible error? Well, when the evidence, the only evidence, Your Honors, before the court is that there was intent. The only evidence before the court is. Didn't he testify that he did not have that intent? I'm sorry. Other than his own testimony. Okay. That is evidence. You're right. Other than his own testimony. It's almost never the only evidence. But again. What you're saying is the great weight of evidence, the preponderance of evidence went the other way. But that's the problem is that another judge may have agreed with you. But this judge had evidence. She chose to accept that evidence. And that becomes her finding of fact. And it becomes a very difficult thing on appeal for you to overcome that. Which is why we go back to the 727 issues, Your Honors, which were tried first and tried by Judge Coffman first. And, again, in the 727 forum, Judge Coffman found that there was not enough to show that he intentionally made omissions. We've shown, Your Honors, that all the way from his schedules. This was his second bankruptcy filing. He had counsel. And he made blatant omissions in his schedules that only were corrected when I pointed them out. Then he ran down and amended them only because I pointed them out after this litigation was started. We also have Mr. Davis saying, you know, the issue of the 999,000 shares. We have the Canoga commercial issue where he sold property 60 days before and within that 60-day period took $160,000 or $70,000, paid some to his mom, used it to pay some of his debts, and didn't disclose it. I mean, that's a willful omission. He didn't disclose that he had transferred that property. Then we have the Mojave property. And he said simply, Mojave, I just didn't disclose it. I had it. Yes, you're right. You got me. But I just didn't disclose it. So we have three significant pieces of property. And then the smaller entities like DRD, which was simply not disclosed, DNS development simply not disclosed. And that leads to what the trustee found, Your Honor. The trustee found that there were undisclosed assets which have now been liquidated to nearly $500,000. If this is okay, if this is okay for a debtor to say, I didn't think it was important, it's no big deal. And the trustee said. And I suspect that many, many judges would agree with you on those issues. Unfortunately, the judge who tried this issue saw the evidence the other way. You've got three minutes left. You may want to reserve that for our. Well, I. You say what you want to say. Fine. I'll reserve. That's fine. Thank you. Sometimes you've got to trust us. We understand your position. Three minutes left. Counsel. Good morning, Your Honors. Alan Forsley for Defendant Darren Davis. The court got it right here. I mean, this is a clear and erroneous standard. She looked at the facts. She went through it. And under Federal Civil Procedure 52A6. You know, that's really an inconsistent statement. You say the judge got it right, and then you're relying on clear and erroneous evidence. What you're really saying is even if she got it wrong, you can't overturn it on appeal because the standards creates a burden to that result. That's correct. Thank you for correcting me. And she also. I prefer the argument. She got it right, Judge. I think that's simpler and less complicated. Well, she painstakingly went through all the facts, and she analyzed them, and she said, look, this is what I found. And she looked at the evidence of the witnesses as well. And this court has to give deference to her determination of the credibility of the witnesses as well. So there's really nothing here for the courts to overturn. She did her job, and the evidence was presented before her. She analyzed it, and she came with her decision. Unless the courts, the honors have any indication. Does it really come out to what I suggest, which is it is kind of a funny result, given the fact that the other here, Pona, did so well in state court and prevailed on fairly difficult causes of action where the state court judge saw it his way or his client's way. And then it comes to bankruptcy court, and the bankruptcy court says, well, given all of that, I still don't think he really intended to defraud anyone. Well, alter ego is really, it's not about fraud. It's about wrongdoing in terms of failing to recognize and failing to follow the corporate formalities. And that's what happened. They were transferring monies back and forth between different companies. And that, the court determined, was wrongdoing because it left the entity that owed the money with no money to pay the debt. And the court said, you know what, you can't do this. It's not that they intended to fraud anybody. They were moving monies around, going back and forth. They were just not as professional as they should have been with the entity. And at the end of the day, the creditor here was paid in full, 100%, which brings me back to that payment was made in June of 2013. Payment in full. So appellant's counsel talks about, well, we have these more appeals to do, and that's why we didn't go back to state court. But they're paid in full. If they're paid in full and the judge has been satisfied, what further appeals do you have? There are none. Well, there's putative damages claims pending in state court, right? Correct. So he should have gone back to state court back in 2013 at the latest. And requested a trial to do the trial on the fraud claims. He still could do that, right? He could still do that, right? But he never has. And that was the whole reason in this case we stipulated to motion for leave from state in September of 2010 to allow him to go back to the state court. He didn't do it. The judge paid him full in June of 2013. He still didn't go back. So he could have gotten these findings in before apparently a favorable venue, but he didn't do it. And that's how the case ended. We both got forced to trial because the findings were never determined in state court. Well, the findings of the bankruptcy court are going to be preclusive on the issue of fraud in the state court, correct? I'm sorry. I didn't hear that. Judge Kaufman's findings of fraud in the bankruptcy court are going to be preclusive now in the state court, correct? That's correct. They will be as to Mr. Davis, and it may be to some of the other defendants as well. All right. I guess this is more of a comment than a question, but it does seem to me like your client dodged a pretty big bullet here, and there is a point at which error can be clear. I mean. Well, not here. Again, the state court never determined any fraudulent conduct. Wrongdoing is different than fraudulent conduct. Breach of contract cause of action in Alter Ego, which is not really cause of action, it's just a determination of whether another party should be liable for that particular debt, and that's all the state court did. I understand that point, but it seems to me that there were a series of errors on the schedules, for example, a series of errors and omissions on the schedules. Which could well have gone the other way with the different judges. Right, right. 727. He said, well, I forgot, I didn't know I needed to do that, but at some point many judges would find that explanation just doesn't wash anymore. There's just too many supposedly innocent errors. That's true. If my client had two or three different LLCs, that would be one thing, but my client had 25 interest in LLCs and corporations. He had a lot of entities, a lot of transactions that he didn't understand all of the specifics of, and he also had this state court matter that was going on, and I think the judge took that all into consideration that, yeah, it's understandable that he may have missed a couple of things, and when he did miss them, he promptly amended the schedules and put them there to give the trustee sufficient time and any creditor to question about those transfers and determine whether assets could be brought into the estate. I always wondered, you know, again, it's an abusive discretion point, but I think going to what Judge Ferris said, sort of the broom behind the schedules, you know, I have an obligation as a debtor to disclose. I am struck by the numerosity of the points, and is cleaning it up later sufficient? Well, the whole purpose that we allow the debtor to amend, the code allows the debtor to amend the schedule at any time, there is a purpose to that. Yes, it's sufficient to amend the schedules and put that in permission so long as the trustee or any other creditor has time to take a look at that asset, and the estate is not suffered as a result of that failure to schedule the particular asset, and that's what happened here. For example, you know, the trustee looked at everything, and when something was amended, the trustee looked like a Canoga Park and took no action on that for three years. I have nothing further, Your Honors. Thank you. Thank you. Three minutes. I'm glad you encouraged me to take the three minutes. First of all, Schedule G is a problem because that was pre-trial discovery. I asked for documents. Debtor says, I have no documents at all. Then at trial he shows up with schedules which he says shows that his assets really have no value. He didn't amend until, as I said before, after I pointed it out to him, and he didn't amend at all on Mojave. He didn't amend at all on Canoga Commercial. When you say Schedule G, do you mean Exhibit G? Yeah. Well, Exhibit G, which was – You said Schedule G. That's what I wanted to say. I meant Exhibit G, which was – Wasn't that on the exhibit list before trial? Yes, it was. I had requests for production of documents. His response was, I don't have any documents. Those were trial exhibits. Those were admitted trial exhibits. But the exhibit itself, Exhibit G, wasn't that on the list? Yes. So you knew about it at least when the list was exchanged? No, no, no. All I knew – no, no, I'm sorry. The Exhibit G, the schedules, the bank statements, no, no. The only thing that I'm saying was on was my request for documents and his statement, there are no documents. It was not until trial, after I had examined him, that counsel produced Exhibit G, which is their Exhibit G, not mine. And Exhibit G was these financial records that I'd never seen before, that the court had never seen before. That he said, well, these financial records, they show that I have no value in these assets. Those records could have been prepared the night before, but I wasn't given a chance to look at them, to depose him about them, to find out more information because I didn't have them. And I think that's a problem. As I do, for counsel to say there's no damage is just not true. We put on evidence of unpaid invoices. We put on evidence of waiting time invoices. We put on evidence of material that had to be sent back, which has never been paid. And that was the last day of the trial, Your Honors, if you look at the transcript. That argument just doesn't hold water. We have a claim, but as you indicated, Your Honors, we have a punitive damage claim, which is going to go away. But if you got a judgment already on your contract damages claim, wouldn't that preclude these additional, what sounded to me like contract damages? No, because we were limited to mechanics liens. They were all based on mechanics liens, and the four corners of those mechanics liens governed how much we could ask for. The mechanics liens were recorded before the lawsuit. So we have mechanics liens that say X, and we have all kinds of damages that follow those mechanics liens. We were not allowed to put on that evidence in Phase 1. That's what was going to be saved for Phase 3, along with the fraud positive action. The extra damages that were never accounted for. So Phase 3 was not just fraud. It was also additional contract damages. That's correct, and attorney's fees that were never covered, because the attorney's fees for the alter ego were never covered in the prior action. I also wanted to say that the court did rule in finding the alter ego that for us not to find alter ego would be to sanction a fraud. I know that's not binding on the bankruptcy court, but that's the mind of the state court. If we don't find alter ego against Mr. Davis, we will have sanctioned a fraud. Was that necessarily decided as part of the alter ego claim? And I think that's his point. It wasn't. Well, but that was one of the elements for alter ego. I mean, if you go down the 17 list, the items, if you don't find all 17, then you don't get it. If you do find it, then essentially the next step is fraud. I mean, that's what it all leads to. It's not you get a Boy Scout merit badge for getting alter ego. It's a bad thing. But is the definition of fraud for purposes of that under California law the same as the definition for fraud in the tort sense? I believe so. I believe those definitions are the same, and I believe that if you find fraud there, that that's one of those issues that would have been binding. We just didn't get there. And, again, it wasn't my doing that the state court action is. I can't tell the state court what to do. I can only keep pushing it along, but I can't. This case was filed. I'm married to a state court trial, so I'm familiar with that. Thank you. Thank you. Your time is up. This matter is submitted. We'll issue a disposition. Thank you.
judges: Kurtz, Taylor, and Faris